**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANK FERRO,** *Plaintiff,* | : | |
| **v.** | : | **CIVIL NO. 25-1709** |
| **MICHAEL D. GOLDEN et al.,** *Defendants.* | : | |

**Scott, J.** **August 12, 2026**

**MEMORANDUM**

Defendant Officer Michael Golden has moved to dismiss Plaintiff Frank Ferro's Complaint for failure to state a claim. ECF No. 22. Defendants AT&T and Jonathan Steiner have also moved to dismiss Ferro's Complaint for failure to state claims against them. ECF No. 28. For reasons given below, the Court grants both motions to dismiss.

## I. Background

On July 8, 2018, Plaintiff Frank Ferro was working to upgrade the batteries at a cellular tower in Eddystone, Pennsylvania, when multiple Eddystone police officers arrived at the tower, informing Ferro that Metropolitan Communications, a now-dismissed Defendant, had complained that he was on the property illegally. Compl., ECF No. 1, ¶¶ 13–14. Ferro provided Defendant and Eddystone police officer Michael Golden with a valid work order, log-in credentials for the property, and an authorization that allowed Ferro to perform work on the cellular tower. *Id.* ¶ 5. After Golden confirmed with AT&T that Ferro was permitted to work on the tower, the Eddystone officers left. *Id.* ¶¶ 16–17.

At some point after Ferro finished his work on the cellular tower, Defendant Jonathan Steiner, an asset protection senior investigator for AT&T, complained to Golden that Ferro had

stolen eight batteries. *Id.* ¶ 19. On October 15, 2018, Golden filed an arrest warrant for Ferro, but Ferro moved to South Carolina shortly after the arrest warrant was filed. *Id.* ¶¶ 20–21.

On January 1, 2023, Ferro had moved to Gloucester, New Jersey, at which point Gloucester police officers arrested him and charged him in relevant part with being a fugitive of justice. *Id.* ¶ 22. Plaintiff was incarcerated for approximately three weeks in January 2023. *Id.* ¶ 23. By April 2023, a Delaware County, Pennsylvania Judge dismissed all charges against Ferro. *Id.* ¶ 24.

Ferro then sued the Defendants, bringing the following four claims: (1) a § 1983 claim against Michael Golden and Jonathan Steiner, alleging that the Defendants had violated Ferro's Fourth Amendment Rights through malicious prosecution; (2) a malicious prosecution claim against Defendants Golden, Steiner, and AT&T, apparently brought under Pennsylvania common law; (3) a claim for vicarious liability against AT&T, and (4) a claim for intentional infliction of emotional distress against Defendants Golden and Steiner. *Id.* ¶¶ 25–37.

## II. Legal Standard

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility means 'more than a sheer possibility that a defendant has acted unlawfully.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the

light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

The Court employs a three-step process to evaluate a motion to dismiss for failure to state a claim for relief. *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). First, the Court articulates the elements of the claim. *Id.* Second, the Court reviews the complaint but disregards any "formulaic recitation of the elements of a . . . claim or other legal conclusion" and any allegations that "are so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Id.* at 327-28 (internal quotation marks and citations omitted). Third, the Court evaluates the plausibility of the remaining allegations while assuming the truth of the well-pleaded allegations, construing them in the light most favorable to plaintiff, and drawing all reasonable inferences in plaintiff's favor. *Id.* at 328.

## III. Discussion

### *A. Plaintiff Does Not State A Claim for Malicious Prosecution Under § 1983*

To state a claim for relief for malicious prosecution in violation of the Fourth Amendment under 42 U.S.C. § 1983, Plaintiff Ferro must allege the following:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Allen v. New Jersey State Police*, 974 F.3d 497, 503 (3d Cir. 2020). Defendant Golden argues that Ferro's complaint does not sufficiently allege the third, fourth, and fifth elements against him. ECF No. 22 at 7. Defendant Steiner argues that Ferro's Complaint does not sufficiently allege the first, second, third, and fourth elements against him. ECF No. 28-1 at 10. Additionally, Defendant Golden argues that he is entitled to qualified immunity under § 1983, and Defendant Steiner argues

that he is not a state actor for purposes of § 1983 litigation. ECF No. 22 at 10; ECF No. 28-1 at 10–12.

Under the facts alleged, Defendant Golden is immune from suit under the doctrine of qualified immunity, which "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 231.

The test to determine whether qualified immunity applies is a two-pronged inquiry. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). "The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Id.* at 656 (citation modified). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "The salient question is whether the state of the law at the time of the incident provided 'fair warning' to the defendants 'that their alleged conduct was unconstitutional.'" *Id.* (citation modified). "'Clearly established' for purposes of qualified immunity means that 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 614–15 (1999) (citation modified). "Thus, qualified immunity does not apply when the facts, taken in the light most favorable to the party claiming injury, show that the officer's conduct violated a constitutional right, and, as an additional condition, when the right at issue—'defined at the

appropriate level of specificity'—was 'clearly established.'" *Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 299 (3d Cir. 2024) (quoting *Lozano v. New Jersey*, 9 F.4th 239, 245 (3d Cir. 2021)) (citation modified).

The Court may choose which prong to engage with first because Plaintiff must satisfy both. Here, the Court focuses on the second prong, which requires assessing whether Defendant Golden's conduct violated a clearly established right. Before determining whether Defendant Golden violated a clearly established right, the Court must first articulate at the appropriate level of specificity what the right is. *Id.* at 615. In this case, the right concerns whether a police officer violates the Fourth Amendment by filing an arrest warrant based on an accusation that is in tension with a specific fact that the officer had personally verified earlier, without taking some step to fully reconcile the tension before filing the arrest warrant.

The Court has not found any cases in which this right is clearly established. Nor do the Parties cite any such cases. Ferro cites a line of cases that suggest officers who blind themselves to potentially exculpatory evidence may violate the Fourth Amendment. *See, e.g.*, ECF No. 17 at 2–3; *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("[T]he qualified immunity doctrine gives ample room for mistake judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") (citation modified); *Ruiz v. Lebanon Cnty, Pa.*, 325 Fed. Appx. 92 (3d Cir. 2009) (observing that "affidavits [that] set forth conclusory statements that [the criminal defendant] committed the crimes cited therein]" is an insufficient basis to establish probable cause to issue the arrest warrant) (citation modified). But those cases are not sufficiently analogous to the fact pattern here, which requires evaluating whether Officer Golden must have reconciled a seemingly credible accusation of theft by Steiner, an asset protection senior investigator for AT&T, with the fact that Defendant Golden had documentation

from Ferro that suggested Ferro had permission to work on the cellular tower to update the batteries.[1] Defendant Golden did not blind himself to exculpatory evidence but only failed to reconcile, per Ferro's allegations, whether the accusation of theft by an AT&T employee was fully undermined by Ferro's permission to work on the batteries at the cell tower. Defendant Golden's cases are similarly off the mark, standing more for the proposition that officers may rely on credible reports without resolving every ambiguity before filing an arrest warrant. *See, e.g.*, ECF No. 22 at 8; *Heien v. North Carolina*, 574 U.S. 54, 65–66 (2014) (discussing a line of cases where an officer's mistaken view about criminal conduct does not necessarily violate the Fourth Amendment as long as the mistaken view was reasonable for the officer to hold given the facts at hand); *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 790 (3d Cir. 2000) (holding that a reasonable person in a detective's possession may possess sufficient facts to establish probable cause on the basis of a witness's report that an individual was committing theft). But these cases do not reach the heart of the issue here, namely whether an officer must reconcile a personally verified fact before filing an arrest warrant. The Court holds that the right at issue was not clearly established at the time Defendant Golden filed the arrest warrant. Defendant Golden is therefore entitled to qualified immunity.

Defendant Steiner is not liable to suit under § 1983 because he is not a state actor and he was not acting under the color of state law. *See Pugh v. Downs*, 641 F.Supp.2d 468, 472 (E.D. Pa. 2009) (observing that a private entity may only be liable under § 1983 if that private party is "fairly said to be a state actor") (citation omitted). There are four tests to determine whether a private

---

[1] Ferro makes no allegations about what facts Golden submitted to establish probable cause to issue an arrest warrant. But the Court's review of the allegations suggest that Golden may have had a reasonable basis to issue an arrest warrant given the accusation of theft from an AT&T employee. After all, "an affidavit of probable cause must state facts showing a 'fair probability' that the proposed target of arrest engaged in criminal activity.'" *Ruiz*, 325 Fed.Appx. at 95 (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)) (citation modified). The allegations in Ferro's Complaint do not establish that Golden was "plainly incompetent" nor that he "knowingly violated the law." *Orsatti*, 71 F.3d at 484.

entity may be a state actor: (1) when "there is a sufficiently close nexus between the state and the challenged action of the [private] entity so that the action of the latter may fairly be treated as that of the state itself," *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); (2) where "the state has so far insinuated itself into a position of interdependence" with the private entity, *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961); (3) where a private entity is a "willful participant in joint action with the State or its agents," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); and (4) where the private entity has been "delegated . . . a power traditionally exclusively reserved to the State." *Terry v. Adams*, 345 U.S. 461, 468–70 (1953); *see also Pugh*, 641 F.Supp.2d at 472 (explaining all four tests).

Under the facts alleged, Steiner's conduct does not render his actions attributable to the state under any test. At most, Steiner contacted Defendant Golden to report what he believed to be a crime. Compl. ¶¶ 25–29. That behavior is typical of private citizens, and it does not suffice to make Defendant Steiner liable to suit under § 1983.

## IV. Conclusion

Because Defendant Golden enjoys qualified immunity and because Defendant Steiner is not liable to suit under § 1983, Count I is dismissed with prejudice. The Court declines to exercise supplemental jurisdiction of Plaintiff Ferro's pendent state law claims. An order follows.